■ DEBRA HOLDEN OSORIO, Appellant, v JOSEPH OSORIO, Respondent. [925 NYS2d 111]—

In a matrimonial action in which the parties were divorced by judgment dated November 12, 1994, the plaintiff appeals from an order of the Supreme Court, Rockland County (Garvey, J.), dated February 25, 2010, which granted the defendant's motion, in effect, for a pro rata share of the plaintiff's pension which she received from Lucent Technologies, Inc., and the portion thereof which the plaintiff received as a result of her election to take an early retirement incentive from her employer, denied, without prejudice, as premature, that branch of her cross motion which was, in effect, for a share of the defendant's non-tier 1 railroad retirement benefits, and denied that branch of her cross motion which was, in effect, for a share of the defendant's tier 1 railroad retirement benefits.

Ordered that the order is modified, on the law, by deleting the provision thereof denying, without prejudice, as premature, that branch of the plaintiff's cross motion which was, in effect, for a share of the defendant's non-tier 1 railroad retirement benefits; as so modified, the order is affirmed, without costs or disbursements, and the matter is remitted to the Supreme Court, Rockland County, for further findings of fact, a determination of the plaintiff's share of the defendant's non-tier 1 railroad retirement benefits in accordance with the terms of the parties' stipulation of settlement of the divorce action, and the entry of an appropriate qualified domestic relations order.

The parties were married on October 11, 1980, and the plaintiff commenced a divorce action on May 10, 1993, after 12½ years of marriage. On October 11, 1994, the parties entered into a stipulation of settlement, which was incorporated but not merged into their judgment of divorce. The stipulation provided,

in pertinent part: "[T]he parties, both through their employment have pension plans. [The defendant] through the U.S. Railroad Retirement Board, and [the plaintiff], directly through the [AT&T] Plan. Each party will receive a fifty per cent [*sic*] interest of the other party's defined pension plan as accrued during the course of the marriage pursuant to the so-called Majauskas Formula."

The plaintiff's employment with AT&T was terminated on January 13, 1996, and her participation in the AT&T pension plan terminated. On April 22, 1998, the plaintiff was employed by Lucent Technologies, Inc. (hereinafter Lucent), and enrolled in the Lucent pension plan, which carried over her pension credits from AT&T. In June 2001 the plaintiff accepted an early retirement incentive, and received five years of additional service credit.

The defendant moved for a determination of "the amount that the defendant is to receive from the plaintiff's pension in a Qualified Domestic Relations Order." In his motion, the defendant claimed that the plaintiff retired on July 13, 2001, without informing the defendant that she had retired.

The plaintiff claimed that the pension benefits she received from Lucent were "separate and distinct from the A.T.& T. plan." She further claimed that the five-year credit to her pension was dependent on three factors: (1) the predivorce factor that she was employed by AT&T on December 1, 1983, (2) the postdivorce factor that her employment with AT&T was terminated on January 13, 1996, and (3) the postdivorce factor that she started work at Lucent on April 22, 1998. The plaintiff's Lucent pension was covered by a mandatory portability agreement between Lucent and AT&T, which provided for "mutual recognition of service credit and transfer of benefit obligations for certain employees who leave one interchange company and are later employed by another interchange company."

The plaintiff cross-moved for a determination of her share of the defendant's pension plans with the employer "N.J. Transit," and the entry of a qualified domestic relations order (hereinafter QDRO) with respect to the defendant's pension plans. She claimed that "all retirement benefits owned by the defendant" should be included. In opposition, the defendant submitted material from the Railroad Retirement Board, which noted that the defendant's retirement benefits included a "Tier 1 railroad retirement benefit component," which was "not subject to division" in the case of a divorce, and tier II benefits, a supplemental annuity, and "dual benefits," which were subject to division in

the case of a divorce. The defendant claimed that his deferred compensation plan was not covered by the terms of the stipulation of settlement because it was not a pension.

In the order appealed from, the Supreme Court concluded that the defendant was entitled to a share of the plaintiff's pension from Lucent, and "should receive his pro rata share of the enhanced retirement which was awarded to [the] Plaintiff." The Supreme Court, inter alia, denied that branch of the plaintiff's cross motion which was, in effect, for a share of the defendant's tier 1 railroad retirement benefits, on the ground that tier 1 retirement benefits are similar to social security payments and, thus, are not subject to equitable distribution. The Supreme Court denied, without prejudice, as premature, the remainder of the cross motion on the ground that the defendant had not yet retired, and was not receiving pension benefits.

Although the plaintiff started working for Lucent in 1998, well after the marriage terminated, her Lucent pension gave her credit for her service to AT&T during the marriage. The fact that the plaintiff's employer was Lucent, not AT&T, was not relevant on these facts, since pension rights which accrued during the marriage at AT&T were transferrable to Lucent. Marital property may include all assets "earned in whole or in part during the marriage" (*DeLuca v DeLuca*, 97 NY2d 139, 143 [2001]; *see Olivo v Olivo*, 82 NY2d 202, 210 [1993]). Although payments made as an "incentive to continued employment" postdivorce are generally considered separate property not subject to equitable distribution (*DeLuca v DeLuca*, 97 NY2d at 145), the early retirement incentive here was not an incentive to future employment. The plaintiff's eligibility was dependent in part upon predivorce conditions, and her service to AT&T during the marriage. To the extent the Lucent pension was compensation for past service for AT&T during the marriage, it constituted marital property (*see DeJesus v DeJesus*, 90 NY2d 643, 652 [1997]; *cf. Wade v Steinfeld*, 15 AD3d 390 [2005]; *Valachovic v Valachovic*, 9 AD3d 659 [2004]).

The Supreme Court's determination that the defendant's tier 1 retirement benefits under the Federal Railroad Retirement Act were the equivalent of social security benefits and, thus, were not subject to equitable distribution, was proper (*see Wallach v Wallach*, 37 AD3d 707, 709 [2007]). Moreover, the Supreme Court properly concluded that the plaintiff was not entitled to a 50% share of the defendant's deferred compensation plan under the terms of the stipulation of settlement which referred only to his "defined pension plan" (*see Dreiss v Dreiss*, 258 AD2d 499, 500 [1999]; *see also Moran v Moran*, 289 AD2d

544, 544-545 [2001]; *cf. Bayen v Bayen*, 81 AD3d 865, 865 [2011]; *O'Beirne v O'Beirne*, 5 AD3d 572, 572-573 [2004]).

However, the Supreme Court's determination that an adjudication of the plaintiff's rights pursuant to a QDRO was premature, since the defendant was still working, and not receiving pension benefits, was incorrect. "[A]n order directing future payment of pension benefits can be provided for in [a] qualified domestic relations order" (*Pickard v Pickard*, 33 AD3d 202, 207 [2006]; *see Kazel v Kazel*, 3 NY3d 331 [2004]; *Bayen v Bayen*, 81 AD3d 865 [2011]; *Harrington v Harrington*, 300 AD2d 861 [2002]; *Fodrowski v Fodrowski*, 227 AD2d 519 [1996]).

The parties' remaining contentions either are without merit or are not properly before this Court.

Accordingly, the matter must be remitted to the Supreme Court, Rockland County, for further findings of fact, a determination of the plaintiff's share of the defendant's non-tier 1 railroad retirement benefits in accordance with the terms of the parties' stipulation of settlement of the divorce action, and the entry of an appropriate QDRO. Covello, J.P., Chambers, Lott and Miller, JJ., concur.